UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
DANIEL ALMAZO, LUIS BARBECHO,
MANUEL IMANAGUA, ELIAS JUAREZ,
LUIS MOLINA, JUSTO SAUL MORA,
LUIS MOROCHO, and LUIS TIERRA
on behalf of themselves and others
similarly situated

                 Plaintiffs,        <u>OPINION</u>

       -against-                11 CV 1717 (MGC)


M.A. ANGELIADES, INC.;
ANGELIADES GROUP LLC, MERKOURIOS
"MIKE" ANGELIADES, DIMITRI
MALAKIDIS, IRENA ANGELIADES,
FEDERAL INSURANCE COMPANY, a
subsidiary of Chubb Group of
Insurance Companies, and JOHN DOES
#1-100,

                 Defendants.

----------------------------------X

**Cedarbaum, J.**

      Plaintiffs bring this putative collective and class
action for failure to pay overtime wages for work performed
on weekends against defendants M.A. Angeliades, Inc.,
Angeliades Group LLC, Merkourios "Mike" Angeliades, Dimitri
Malakidis, Irena Angeliades (collectively, "Angeliades
Defendants"), and Federal Insurance Company.  Plaintiffs,
individual workers, assert claims for failure to pay
overtime wages and retaliation under the Fair Labor

Standards Act ("FLSA") and the New York Labor Law ("NYLL"), and for breach of contract as a third party beneficiary.

Three motions are before the Court.  Defendants move for partial summary judgment on the NYLL overtime claims and the contract claim.  That motion is granted as to the NYLL claims and denied as to the contract claim. Defendants also move to quash certain third party subpoenas.  That motion is denied.  Finally, Plaintiffs move to amend the complaint to add Magnetic Construction Corp. as a defendant and to add allegations of failure to pay prevailing and overtime wages for weekday work.  That motion is granted.

**Defendants' Motion For Partial Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In making this determination, courts view all facts in the light most favorable to the nonmovant.  Matthews v. City of New York, 779 F.3d 167, 171 (2d Cir. 2015).

The Angeliades Defendants operate a contracting business in New York City.  The business performs public works projects for city agencies.  The projects at issue here were performed pursuant to contracts (the "Contracts")

2

between some or all Angeliades Defendants and the relevant city agency.

New York Labor Law § 220(2) requires that such contracts for public work contain a stipulation that "no laborer, worker or mechanic . . . shall be permitted or required" to work more than eight hours in a day or five days a week, except in cases of "extraordinary emergency including fire, flood or danger to life or property."[1] Extraordinary emergency is also defined to include instances where the Commissioner of Labor determines that the time restrictions prevent a project from being completed "expeditiously".  The provision goes on to state that "any person interested" can apply to the Commissioner for a dispensation to allow workers to work longer hours—— for which they would receive premium wages.

In the public works Contracts at issue here, that required stipulation took the following form:

> (a)  No laborer, worker or mechanic in the employ of the Contractor, subcontractor, or other person doing or contracting to do the whole or a part of the Work contemplated by the Contract, shall be permitted or required to work more than eight hours in any one

---

[1] This provision implements the New York Constitution, Article 1, Section 17: "[n]o laborer, worker or mechanic, in the employ of a contractor or sub-contractor engaged in the performance of any public work, shall be permitted to work more than eight hours in any day or more than five days in any week, except in cases of extraordinary emergency; nor shall he be paid less than the rate of wages prevailing in the same trade . . . ."

calendar day or more than five days in any one week, except in cases of extraordinary emergency . . . . The term "extraordinary emergency" as contained herein shall have the meaning set forth in Section 220 of the New York State Labor Law.

(b)   No contractor or subcontractor contracting for any part of the Contract work may require or permit the employment of laborers or mechanics to be employed on such work in excess of either (8) hours in any calendar day in excess of forty (40) hours in any workweek unless such laborer or mechanic receives compensation at a rate of not less than one and one-half times (1 ½) the basic rate of pay for all hours worked in excess of eight (8) hours in any such calendar day, or in excess of forty (40) hours in any such workweek, as the case may be.[2]

The NYLL also provides that

[u]nless otherwise provided by law, the following number of hours shall constitute a legal day's work . . . . For all other employees . . . eight hours. This subdivision shall not prevent an agreement for overwork at an increased compensation, except upon work by or for the state or a municipal corporation, or by contractors or subcontractors therewith, and except as otherwise provided in this chapter.

N.Y. Lab. Law § 160.  Finally, the NYLL provides for

criminal penalties for contractors that require overtime on

public works projects: "[a]ny person contracting with the

state or a public benefit corporation, or a municipal

corporation . . . that shall require more than eight hours

---

[2] Although Defendants provide only a one-page example of this required provision in one contract between an unidentified city agency and M.A. Angeliades, Inc., Plaintiffs "are willing to presume" for the purposes of this motion that the sample provisions provided were included in each relevant Contract. Pls.' Opp. Br. at 19, Dkt. #91.

work for a day's labor, unless otherwise permitted by law,
is guilty of a misdemeanor."  N.Y. Lab. Law § 220(2-a); see
also N.Y. Lab. Law § 220(3)(d)(i)-(iv) (criminal penalties
for failure to pay prevailing wage).

Plaintiffs worked as laborers and carpenters on public
works projects for the Angeliades Defendants.  Plaintiffs
allegedly worked Monday through Friday for forty hours, and
sometimes were required to work sixteen to twenty-four
additional hours on weekends.  For the weekend work,
Plaintiffs claim they were paid less than their weekly
hourly rate.

As to Plaintiffs' statutory claims, NYLL § 220(7)-(9)
requires employees of public works projects to exhaust
administrative remedies before bringing a private right of
action.  Samborski v. Linear Abatement Corp., No. 96 CIV. 1405
(DC), 1998 WL 474069, at *2 (S.D.N.Y. Aug. 10, 1998); Ethelberth
v. Choice Sec. Co., No. 12-CV-4856 PKC, 2015 WL 861756, at *16
(E.D.N.Y. Feb. 27, 2015).  Plaintiffs have given no indication
that they have exhausted administrative remedies.  Summary
judgment on the NYLL overtime claims is therefore granted.

In New York, a public works project employee denied
proper wages is not limited, however, to statutory
remedies.  The employee may bring a common law breach of
contract claim as the intended third party beneficiary of a

public works contract.  <u>Fata v. S.A. Healy Co.</u>, 289 N.Y.
401, 404-07 (1943).

The Angeliades Defendants argue that Plaintiffs cannot
recover under the Contracts because both the Contracts
themselves and the NYLL prohibit employees of public works
projects from working overtime.  Plaintiffs' overtime work
was, according to Defendants, an "illegal bargain" and thus
unenforceable.  Defendants' position is unsupported by the
Contracts, and even if the NYLL does bar Plaintiffs'
overtime work, the Contracts are nonetheless enforceable.

The Contracts at issue here are between various public
agencies and the defendant contractor.  The employees of
the contractor (Plaintiffs) are not parties to the
Contracts——they are beneficiaries.  Accordingly, the
Contracts do not regulate the conduct of the workers; the
Contracts regulate the conduct of the contractor.  That is
why the contract language promises that no worker "shall be
permitted or required to work more than . . ." instead of
no worker "shall work more than . . ."——the admonition is
directed at the contractor.

The Angeliades Defendants have allegedly failed to
adhere to that admonition.  Their breach does not, however,
render inapplicable the next section of the Contracts,
which states that no contractor "may require or permit"

overtime work unless it pays a premium wage.  That language is unambiguous——workers are owed a premium wage for overtime hours worked.  That the contractor may have breached his contract with the public agency has no bearing on a worker's ability to recover as a third party beneficiary.

It may be true, as Defendants argue, that NYLL § 160 prohibits overtime work on public works projects.[3]  However, even if the overtime work Plaintiffs performed pursuant to the Contracts was illegal, the Contracts are not necessarily unenforceable.  A contract that violates a regulatory statute is enforceable if 1) the statutory violation is only unlawful by virtue of the statute (and not evil in itself); 2) the statute does not "specifically require that all contrary contracts be rendered null and void"; and 3) the penalty imposed by voiding the contract is "wholly out of proportion to the requirements of public policy."  Schlessinger v. Valspar Corp., 686 F.3d 81, 85

---

[3]   At the least, it is clear that, contrary to Defendants suggestions, neither NYLL § 220(2) ("no laborer . . . shall be permitted or required to work . . . ."), nor the New York Constitution, Article 1, Section 17 ("no laborer . . . shall be permitted to work . . . ."), prohibits public works project employees from working overtime.  Rather, these laws prohibit the contractors from permitting or requiring public works project employees to work overtime.

(2d Cir.) (citations omitted); see also Benjamin v.

Koeppel, 85 N.Y.2d 549, 553 (1995).

   The Contracts meet this test.   There is nothing

inherently immoral about overtime work——indeed, the NYLL

provides for overtime outside the public works context.

Nothing in the NYLL specifically voids the Contracts.   And

the widely recited purpose of § 220 is to protect

"workingmen against being induced, or obliged, to accept

wages below the prevailing rate from a public employer."

Bucci v. Village of Port Chester, 22 N.Y.2d 195, 201

(1968).   Indeed, the Court of Appeals of New York has

demanded that § 220 "be construed with the liberality

needed to carry out its beneficent purposes."   Id.   Using a

statute so-designed to deny workers overtime pay would

achieve the opposite of the legislature's intended end.

See Garcia v. Pasquareto, 812 N.Y.S.2d 216, 217 (App. Term

2004) ("To condone dismissal of actions for wages earned

but not paid, regardless of the legal theory employed, on

the ground that such labor contracts are 'illegal', would

thus directly contravene the public policy of the State of

New York.").

   In addition, "courts are especially skeptical of

efforts . . . to use public policy as a sword for personal

gain rather than a shield for good."   Koeppel, 85 N.Y.2d at

8

553 (internal quotation marks omitted).  Illegal contracts
are thus often enforced where "there is the potential that
the defendant could receive a windfall" if the plaintiff is
not paid for services rendered.  Schlessinger, 686 F.3d at
86.  Here, Defendants have allegedly received overtime work
from Plaintiffs, without having to pay overtime wages.

Also supporting enforcement is the existence of
sanctions provisions in the statute.  "Allowing parties to
avoid their contractual obligation is especially
inappropriate where there are regulatory sanctions and
statutory penalties in place to redress violations of the
law."  Lloyd Capital Corp. v. Henchar, Inc., 80 N.Y.2d 124,
128 (1992); see also Koeppel, 85 N.Y.2d at 555-56.  Under
the NYLL, contractors face criminal penalties for
unlawfully requiring workers on public works projects to
work overtime, or failing to pay them earned overtime
wages.  N.Y. Lab. Law § 220(2-a); N.Y. Lab. Law
§ 220(3)(d)(i)-(iv).

Defendants argue that this case is governed by New
York state court decisions that refuse to enforce contracts
illegally entered into by the State or a municipality.  In
Donovan v. City of New York, 33 N.Y. 291 (1865), for
example, workers brought suit against the city for wages
owed them for work on roads.  The court denied the workers'

9

claim because the city department that hired them had done so without the statutorily required consent of the city council.  Thus the workers "were employed in contravention of the policy and terms of the statute, and they [could not] invoke the aid of the courts to enforce an unlawful agreement."  Id. at 293.  However, the court noted that the workers would have redress "against those who without authority assumed to employ them."  Id. at 292; see also Burns v. City of New York, 105 N.Y.S. 605, 606 (App. Div. 1907) ("He knew that the city of New York had no authority to make such a contract, and, not having the power, it cannot be charged with the obligation.").

Here, in contrast, Plaintiffs were hired by private contractors who have refused to pay Plaintiffs for alleged overtime work.  Donovan and Burns are inapplicable——those decisions simply barred city officials from entering into unauthorized contracts.  The Court of Appeals in Donovan recognized that the unauthorized individuals could be personally obligated to the workers.  Similarly, Defendants here may be liable to Plaintiffs for their overtime work.

The situation before the Court is more akin to instances where employers attempt to avoid paying undocumented workers because their labor contracts are illegal.  New York courts have rejected that argument.

10

See, e.g., Nizamuddowlah v. Bengal Cabaret, Inc., 415
N.Y.S.2d 685, 686 (App. Div. 1979) ("[T]he practice of
hiring [illegal] aliens, using their services and
disclaiming any obligation to pay wages because the
contracts are illegal is to be condemned."); Pineda v. Kel-
Tech Constr., Inc., 832 N.Y.S.2d 386 (Sup. Ct. 2007)
("Undocumented workers, no matter what type of documents
they proffered or did not proffer at the time of
employment, may still collect the prevailing wage under New
York Labor Law section 220 for work they have performed.").

Accordingly, the NYLL overtime claims are dismissed,
but the contract claim will proceed.

**Defendants' Motion To Quash Third Party Subpoenas**

Plaintiffs served subpoenas for documents on nine non-
party public agencies.  Defendants move to quash those
subpoenas due to lack of relevance.

"In the absence of a claim of privilege, a party
usually does not have standing to object to a subpoena
directed to a non-party witness."  Langford v. Chrysler
Motors Corp., 513 F.2d 1121, 1126 (2d Cir. 1975).
Defendants assert that they have a "personal privacy right"
to information on the "income amounts [Defendants] received
for work performed for the" public agencies.  However,
given that the agencies made those payments, such

11

information could not be private to Defendants.  See Nova
Products, Inc. v. Kisma Video, Inc., 220 F.R.D. 238, 241
(S.D.N.Y. 2004) (no standing to quash third party subpoenas
where moving party "included no evidence to show that [the
information] was meant to be private or confidential in any
manner").  Defendants therefore lack standing to challenge
the subpoenas.  The motion to quash is denied.

**Plaintiffs' Motion To Amend**

Plaintiffs move to amend their complaint to add Magnetic
Construction Corp. as a party and to add allegations of
failure to pay prevailing and overtime wages for weekday work.

Federal Rule 15(a)(2) states that courts "should
freely give leave [to amend] when justice so requires."
"The rule in this Circuit has been to allow a party to
amend its pleadings in the absence of a showing by the
nonmovant of prejudice or bad faith."  Block v. First Blood
Associates, 988 F.2d 344, 350 (2d Cir. 1993).  Courts have
"broad" discretion in choosing whether to allow amendments.
Local 802, Associated Musicians of Greater New York v.
Parker Meridien Hotel, 145 F.3d 85, 89 (2d Cir. 1998).

Where a proposed amendment seeks to add a new
defendant, Federal Rules 20 and 21 apply.  Under Rule 20,
defendants may be joined if the claims against them arise
"out of the same transaction, occurrence, or series of

12

transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20 (a)(2); <u>see also</u> Fed. R. Civ. P. 21 ("[T]he court may at any time, on just terms, add or drop a party."). Joinder is decided under the "same standard of liberality afforded to motions to amend." <u>Sly Magazine, LLC v. Weider Publ'ns LLC</u>, 241 F.R.D. 527, 532 (S.D.N.Y. 2007) (internal quotation marks omitted).

Defendants have not made a showing of prejudice if the amendment is allowed (or argued bad faith). They claim that Magnetic will be prejudiced because it no longer has documents relating to Plaintiffs' claims. Nowhere, however, does Magnetic assert that it disposed of these documents after this lawsuit was initiated.

Defendants argue that, if the amendment is allowed, the claims against Magnetic should not relate back to the date of the original complaint. That is incorrect. An amendment adding a new party relates back if the claim asserted against that party arises out of the same "conduct, transaction or occurrence" and if, within the time limit for service, the new party "(i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for

13

a mistake concerning the proper party's identity." Fed. R.
Civ. P. 15(c)(1)(C).

There is disagreement among the courts over whether
"mistake concerning the proper party's identity" includes
instances where a plaintiff seeks to sue an additional
defendant (rather than simply a different defendant).
Compare Abdell v. City of New York, 759 F. Supp. 2d 450,
457 (S.D.N.Y. 2010) ("[I]t is clear that a mistake
'concerning the proper party's identity' under Rule 15(c)
includes lack of knowledge regarding the conduct or
liability of that party."), with In re Vitamin C Antitrust
Litig., 995 F. Supp. 2d 125, 129 (E.D.N.Y. 2014) (no
relation back where "[t]he plaintiff has sued the right
defendant, and simply neglected to sue another defendant
who might also be liable").  As the Supreme Court has
stated in discussing Rule 15(c)(1)(C), no relation back
"would be a windfall for a prospective defendant who
understood, or who should have understood, that he escaped
suit during the limitations period only because the
plaintiff misunderstood a crucial fact about his identity."
Krupski v. Costa Crociere S. p. A., 560 U.S. 538, 550
(2010).  With that reasoning in mind, "mistake concerning
the proper party's identity" should be construed to include
the situation here where Plaintiffs were mistaken as to

14

which entities were responsible for their wages. <u>Cf.</u>
<u>Michalow v. E. Coast Restoration & Consulting Corp.</u>, 2012
U.S. Dist. LEXIS 185362, *19-20 (E.D.N.Y. Oct. 22, 2012)
(amendment relates back where "mistake of plaintiffs . . .
consisted of not understanding the extent to which
prospective defendants were intertwined with, and had
authority in the operation of, the business of defendants
and the alleged conduct that violated the FLSA").

Magnetic was on notice and knew or should have known
that Plaintiffs would have included Magnetic in this action
if not for Plaintiffs' mistake (nor do Defendants challenge
these points).  Plaintiffs have alleged that defendant
Merkourios Angeliades owns Magnetic, that defendants
Dimitri Malakidis and Irena Angeliades are executives at
Magnetic, and that Magnetic is located at the same address
as the other corporate defendants.  The proposed amended
complaint alleges that certain plaintiffs here received
their (inadequate) wages from Magnetic.  The amended
complaint will relate back to the time of initial filing.

**CONCLUSION**

Defendants' motion for partial summary judgment is granted as to the NYLL overtime claims (Counts II and III), but denied as to the breach of contract claim (Count VI). Defendants' motion to quash is denied.  Plaintiffs' motion to amend is granted and the amendment will relate back to the date this suit was initiated.

     SO ORDERED.

Date:     New York, New York
             November 10, 2015

                              S/_____
                                    MIRIAM GOLDMAN CEDARBAUM
                              United States District Judge